1

2
UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

3

4
Sara Quintana,

Case No. 2:21-cv-00023-CDS-NJK

5
                         Plaintiff

**Order Granting in Part and Denying in Part
Defendants' Motion for Summary Judgment**

6
     v.

[ECF No. 57]

7
Clark County School District, et al.,

8
                         Defendants

9

10        This employment discrimination case arises from plaintiff Sara Quintana's allegations

11   that Clark County School District (CCSD) and the Board of Trustees of the Clark County

12   School District (collectively, defendants) discriminated against her on the basis of sex, race,

13   national origin, and disability while she was employed at Rancho High School. *See generally*

14   Second Am. Compl. (SAC), ECF No. 29. Defendants filed a motion for summary judgment. ECF

15   No. 57. Quintana opposes the motion. ECF No. 59. For the reasons herein, defendants' motion

16   for summary judgment is granted in part and denied in part.

17   **I.    Background[1]**

18        Quintana began teaching at Rancho High School in 2014, where she initially taught

19   robotics and aerospace engineering. SAC, ECF No. 29 at ¶¶ 23–24. Quintana claims that she

20   faced discrimination from the start of her time at Rancho High School, including being denied

21   adequate access to her classroom. She describes Gary Archambeault, a white male teacher who

22   had occupied the classroom the previous year, ignoring scheduled meetings to give her the

23   classroom keys. *Id.* at ¶¶ 27–34. Archambault also failed to remove his belongings from the

24

25   _____
     [1]  This section provides a summary of facts from the second amended complaint and is used for the
26   purpose of providing background information for this order, not as findings of fact. However, the parties
     do not dispute several factual allegations, (*see generally* ECF No. 60 at 2–14) so those facts are established
     as undisputed.

classroom causing Quintana to transfer Archambeault's belongings to his new classroom so that she could begin preparing the classroom for the upcoming school year. *Id.* at ¶ 33.

Quintana also claims that she was denied adequate curriculum materials. She states that Archambeault only provided her with an old copy of a required handbook. *Id.* at ¶ 36. Archambeault indicated that she was not allowed to view the curriculum materials because she was not a professor and could not view curriculum owned and copyrighted by Embry Riddle Aeronautical University, but he had also removed other non-copyrighted material from the classroom. *Id.* at ¶¶ 37–38. Quintana describes this as a sharp contrast to her experience with the former robotics teacher, who provided her with all the equipment he had in his possession necessary to teach the course effectively. *Id.* at ¶ 39. However, Quintana still did not have enough equipment to teach three full robotics sections, so she contacted Archambeault about gaining access to VEX cases, which encompassed robotic parts. *Id.* at ¶ 40. He told Quintana that she was "not allowed to use them because they were purchased by the Career and Technical Education office and were exclusive to Aerospace Engineer use." *Id.* at ¶ 41.

Because Quintana did not have sufficient materials, she asked Archambeault if additional materials could be purchased for her classes. *Id.* at ¶ 42. Archambeault responded that he would inquire with those empowered to make the decision. *Id.* Archambeault later told Quintana that her request to purchase materials was denied, but when Quintana asked the then-supervisor Tracy Viscosi why the request was denied, Viscosi told her that Archambeault had never submitted such a request. *Id.* at ¶¶ 43–44. Quintana claims that Archambeault subsequently continued to deny her request for materials. *Id.* at ¶¶ 46–57. When Quintana asked Rancho High School's principal, James Kuzma, to discuss obtaining adequate materials, he responded by asking why she had "to be so difficult" and that if she needed equipment all she had to do was ask, but questioned why purchasing equipment was necessary when equipment was readily available. *Id.* at ¶¶ 58–59. It was not until Quintana was accompanied by Principal Kuzma that Archambault gave Quintana access to the equipment. *Id.* at ¶¶ 60–61. In or around mid-2015,

Archambeault was responsible for compiling the aviation department's budget, and teachers were instructed to create a list of items for their classroom. *Id.* at ¶ 62. Quintana requested software, but none of her requests were fulfilled. *Id.* at ¶ 63. Quintana alleges that other white and male teachers had their requests fulfilled. *Id.* at ¶ 64.

Quintana claims other discriminatory treatment she suffered at Rancho High School includes being denied: access to training, renewal of her license to teach certain courses, recognition for her accomplishments, inclusion in department meetings and emails, funding and expense reimbursement for school sanctioned trips and educational conferences, classroom software and technology, administrative support in dealing with students and parents, ability to post to staff chat rooms, and access to email exchanges regarding discontent with administration. *Id.* at ¶¶ 69–70, 73–75, 79–80, 83–91, 93–95, 100–111, 116–117, 119–128, 129–131, 136–140, 142, 145–150, 157, 159–162, 164–170, 178–187, 191–194, 199.

In around late 2017 to early 2018, Quintana claims she began suffering from an illness and had to take various sick days off through the Family Medical Leave Act (FLMA) to seek treatment. *Id.* at ¶ 171. Quintana's doctor did not provide her with a diagnosis at that time, but her psychotherapist later opined that Quintana's medical issues were a direct result of working at Rancho High School. *Id.* at ¶¶ 171–72.

Around February 2018, Quintana met with Principal Kuzma and Vice Principal Russel Holmen (who also served as the aviation department's administrator (*id.* at ¶ 119)), who both stated that Quintana's FMLA leave was causing her to miss too much work and that she needed to come off of it. *Id.* at ¶ 173.

Around May 2018, Vice Principal Holmen informed Quintana that "she would not be allowed to teach" engineering for the incoming 2018/2019 school year. *Id.* at ¶ 188. He told Quintana that if she returned to Rancho High School for the 2018/2019 school year, she would not have a classroom, she would be ineligible for a prep buyout,[2] and would be assigned to a full

---

[2] A "prep buyout" occurs when a school pays a teacher for performing additional school functions during their preparation period. It is offered on a discretionary basis. ECF No. 57, Ex. Z at 62.

schedule of robotics courses. *Id.* at ¶ 189. Vice Principal Holmen also informed Quintana that the new engineering teacher was Scott Weiler, a white male who did not have an engineering degree and had never taught high school courses. *Id.* at ¶ 190.

In July 2018, Quintana met with Principal Kuzma and Vice Principal Holmen to discuss her intent to return to Rancho High School for the 2018/2019 school year. *Id.* at ¶ 200. Quintana shared that Wieler had suggested that he and Quintana swap teaching assignments. *Id.* at ¶ 201. Quintana claims that Principal Kuzma responded with words to the effect of "[t]hat's not happening. You are never teaching engineering here again." *Id.* Vice Principal Holmen informed Quintana that she would have a full course load of robotics, no dedicated classroom, and would not receive a prep buyout. *Id.* at ¶ 202. In this meeting, Quintana also informed Principal Kuzman and Vice Principal Holmen of her intent to file for FMLA, under which she would take a six-month leave to undergo treatment. *Id.* at ¶¶ 203–04. Quintana claims that because Principal Kuzma and Vice Principal Holmen knew she was taking FMLA leave, they decided to remove her from teaching robotics to freshman studies. *Id.* at ¶ 209; ECF No. 60 at 7.

While on FMLA, in September 2018, Quintana was told that she had not completed the required training for the school year. SAC, ECF No. 29 at ¶ 217. She did not respond to this communication, or a voicemail left by Principal Kuzma asking for clarification regarding her FMLA status. *Id.* at ¶¶ 217, 219. In October 2018, Quintana filed a complaint with the Diversity and Affirmative Title IX Programs regarding her treatment at Rancho High School. *Id.* at ¶ 218. In November 2018, Quintana was approved for additional medical leave of absence, extending through May 2019 (the remainder of the 2018/2019 school year). *Id.* at ¶ 220. In January 2019, Quintana filed a formal Charge of Discrimination with the Nevada Equal Rights Commission (NERC). *Id.* at ¶ 222. The investigation resulted in no finding of discrimination. *Id.* at ¶ 223.

As in previous school years, CCSD informed Quintana that she needed to provide it with written notice of her intent to return to work no later than May 10, 2019 in order to insure a CCSD contract for the 2019/2020 school year. CCSD Human Resources Correspondence-Second

FMLA approval, Defs.' Ex. T, ECF No. 57-3 at 21. Quintana failed to submit the required notice, and as a result, she was administratively terminated on the last day of the 2018/2019 school year. August 22, 2019, CCSD Notification for Leave of Absence Approval, Defs.' Ex. W, ECF No. 57-3 at 32.

## II.   Procedural history

On August 17, 2020, before receiving the termination letter, Quintana filed her complaint in Clark County District Court and later amended her state court complaint. ECF Nos. 1-1, 1-2, 1-3. On January 6, 2021, defendants removed the case to this court and subsequently filed a motion to dismiss. ECF No. 1; ECF No. 6. In September 2021, defendants' motion to dismiss was granted with leave to amend. Order, ECF No. 28. Quintana filed a second amended complaint in October 2021. SAC, ECF No. 29. The amended complaint alleges that defendants violated federal law (Title VII, ADA, FMLA) and state law (NRS 613.330(1)) in the terms and conditions of her employment, and by her separation from employment with Clark County School District, entitling her to damages. *See id.* Defendants now move for summary judgment on each count of Quintana's SAC. ECF No. 57.

## III.   Legal standard

Rule 56(c) provides that summary judgment be granted where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted). The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its

burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**IV.   Discussion**

As a threshold matter, the court notes that defendants' pleadings (ECF Nos. 57, 61) violate Local Rule (LR) IA 10-1, which requires electronically filed documents to be searchable. LR IA 10-1(b). Defendants also improperly filed exhibits to their reply (ECF No. 61) in violation of LR IC 2-2, which requires that "[e]xhibits and attachments must not be filed as part of the base document in the electronic filing system. They must be attached as separate files." LR IC 2-2(a)(3). And both parties incorrectly uploaded exhibits in violation of LR IA 10-3, under which each exhibit's cover sheet "must include a descriptor of the exhibit or attachment (e.g., 'Exhibit 1 – Deed of Trust,' not simply 'Exhibit 1')." LR IA 10-3(e). The parties are advised that adherence to the rules assists the court in resolving motions more expeditiously. Future violations may result in sanctions such as striking the violative pleading.

**A.   Title VII Discrete Act Discrimination (Counts I, II, V)**

Quintana asserts three causes of action under Title VII and state law. SAC, ECF No. 29 ¶¶ 222–53 (Count I), ¶¶ 254–300 (Count II), ¶¶ 301–47 (Count III).[3] Defendants argue summary judgment is appropriate here because Quintana cannot establish a prima facie case of discrimination under her Title VII Discrete Act Discrimination claims. ECF No. 57 at 26. I agree.

Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation,

---

[3] Because courts have interpreted the NRS consistent with the standards and framework of Title VII, I address the claims together. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).

terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. §
2000e-2(a)(1). "A person suffers disparate treatment in his employment 'when he or she is
singled out and treated less favorably than others similarly situated on account of race.'" *Cornwell
v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (quoting *McGinest v. GTE Serv. Corp.*,
360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotations omitted)).

To establish a prima facie case of discrimination under Title VII, a plaintiff must produce
evidence of discriminatory treatment or impact. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th
Cir. 1993). A plaintiff must produce direct evidence that their employer had a discriminatory
intent or motive. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir.
2005) ("Direct evidence is 'evidence, which, if believed, proves the fact of discriminatory animus
without inference or presumption' and 'typically consists of clearly sexist, racist, or similarly
discriminatory statements or actions by the employer.'") (citing *Godwin v. Hunt Wesson, Inc.*, 150
F.3d 1217, 1221 (9th Cir. 1998)). Or in the absence of such evidence, a plaintiff may rely on the
*McDonnell Douglas Corp. v. Green* framework. 411 U.S. 792 (1973). No matter the approach, the
plaintiff retains the burden of persuasion. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th
Cir. 1990).

*McDonnell Douglas* is a burden shifting framework under which a plaintiff must show: (1)
the plaintiff belongs to a class of persons protected by Title VII; (2) the plaintiff performed his or
her job satisfactorily; (3) the plaintiff experienced an adverse employment action; and (4) that
similarly situated individuals outside plaintiff's protected class were treated more favorably.
*Cornwell*, 439 F.3d at 1028 (citation omitted). "The requisite degree of proof necessary to
establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even
need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of California Davis*, 225
F.3d 1115, 1124 (9th Cir. 2000) (internal quotations omitted); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885,
889 (9th Cir. 1994). If the plaintiff establishes the prima facie elements, then the burden shifts to
the employer to rebut the presumption by providing a "legitimate, nondiscriminatory reason" for

the challenged employment action. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (internal quotations omitted); *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer does so, then the burden shifts back to the plaintiff to either offer evidence, direct or circumstantial, that "the employer's legitimate, nondiscriminatory reason is actually a pretext for racial discrimination." *Cornwell*, 439 F.3d at 1028 (internal quotations omitted).

Defendants concede that Quintana satisfied the first two prongs of a prima facie case as she is a member of a protected class and met her employer's legitimate job performance expectations. ECF No. 57 at 26. Thus, the court considers whether Quintana: (1) experienced an adverse employment action and (2) whether similarly situated individuals outside her protected class were treated more favorably as it pertains to her Title VII claims (Counts I, II and V).

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "The Ninth Circuit takes an expansive view on what constitutes an adverse employment action." *Ramirez v. Olympic Health Mgmt. Sys., Inc.*, 610 F. Supp. 2d 1266, 1281 (E.D. Wash. 2009) (citing *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000)). Examples of adverse employment include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Id.* Despite this expansive view, "not every employment decision amounts to an adverse employment action." *Id.*

### 1. Count I: Acknowledgments

In Count I, Quintana claims that Principal Kuzma did not sufficiently acknowledge, recognize, or publicize her achievement of winning the 2017 Association of Career and Technical Educators (ACTE) teacher of the year award compared to the recognition and publicity he gave her white, non-Hispanic colleagues. SAC, ECF No. 29 at ¶¶ 225–38. Defendants argue that Quintana's dissatisfaction with the level of acknowledgement Principal Kuzma gave her receipt

of the award does not rise to the level of an adverse employment action, failing to establish a prima facie case. ECF No. 57 at 26. Quintana claims that "a genuine dispute exists as to the frequency and consistency of these acknowledgements as compared to non-Native American, non-Hispanic teachers" and presented deposition testimony of Jessica Kennedy, a Rancho High School teacher who testified that Quintana's success and achievements were not advertised similarly to other Rancho High School teachers. ECF No. 60 at 17; *see* Kennedy Decl., Pl.'s Ex. A, ECF No. 60-1.

The Ninth Circuit has found that things like "undeserved performance ratings" or a written warning where an employer "publicizes all discipline to all its employees" can constitute adverse employment actions. *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). In this context, the analysis focuses on whether there is actual *harm* to plaintiff's employment. For example, "mere ostracism in the workplace is not enough to show an adverse employment decision," but something like "being excluded from meetings, being denied telephone access, suffering verbal and physical abuse from other doctors, being denied secretarial support, and being given a more burdensome work schedule . . . if proven, would be sufficient to demonstrate an adverse employment decisions." *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 871 (9th Cir. 1996).

Here, Quintana failed to sufficiently plead that she was subject to an adverse employment action in not receiving adequate recognition or publication of her award compared to her white, non-Hispanic colleagues. Quintana presented the deposition of her colleague, Jessica Kennedy, as evidence that Principal Kuzma did not highlight Quintana receiving an award in the same manner as other teachers. ECF No. 60 at 17; *see* Kennedy Decl., Pl.'s Ex. A, ECF No. 60-1 at 2–3. However, this evidence does not show that Principal Kuzma's actions regarding acknowledgement Quintana's award was one that "materially affect[s] the compensation, terms, conditions or privileges. . . of employment." *Chuang*, 225 F.3d at 1126. Instead, it is opinion evidence that Quintana' recognition wasn't on the same level or as "consistent[] as compared to

other teachers at Rancho High School" *See* Kennedy Decl., Pl.'s Ex. A, ECF No. 60-1 at 3. As a result, Quintana failed to prove an adverse employment action with respect to acknowledgement of her ACTE award. Consequently, this claim fails, and I grant defendants' motion for summary judgment for Count I.

### 2. *Count II: Demotion*[4]

In Count II, Quintana alleges that defendants' decision to move her from teaching engineering and robotics to only robotics, and then from robotics to only freshman studies, was a demotion with lesser pay that constitutes a discrete act of disparate treatment in violation of Title VII. SAC, ECF No. 29 at ¶ 247. Quintana further alleges that she was "replaced" by a less qualified white male. *Id*. at ¶¶ 190, 244–45. Defendants move for summary judgment on this claim, arguing that removing Quintana from teaching engineering was not an adverse employment action, but even if it was, they had a non-discriminatory reason to remove her. ECF No. 57 at 27–32.

#### i. *The demotion constitutes an adverse employment action.*

Defendants argue that Quintana's reassignment of courses was not an adverse employment action. They cite *Campbell v. Hawaii Dep't of Educ.*, where the Ninth Circuit found that reassigning a teacher-plaintiff to remedial courses for which she was not certified was not an adverse employment action because the plaintiff did not proffer evidence showing the "school had a policy or practice that promised teachers they would only be assigned to classes within certification areas" and there was "nothing in the record to suggest that such assignment was unusual or, more to the point, that it materially altered any term or condition of [the plaintiff's] employment at the school." 892 F.3d 1005, 1015 (9th Cir. 2018). Similarly here, defendants point out that Quintana has not identified any evidence to suggest that Rancho High School had a

---

[4] Quintana's SAC contains a misnumbered Count III, which contains identical substance as Count II. SAC at 38–40. Quintana acknowledges this error. ECF No. 60 at 20 n.4. Because it contains identical substance as Count II, the court does not address the duplicate Count III.

policy or practice of promising teachers they would only be assigned to classes within certain certification areas.

Though defendants correctly argue that Quintana's salary remained consistent per her contract (ECF No. 57 at 31), removing Quintana from teaching engineering resulted in her inability to receive a prep buyout as she had three previous school years. No. 60 at 10–11, 19. In the Ninth Circuit "[a]dverse employment actions may include not only actions an employer affirmatively takes against an employee (e.g., firing or demoting the employee) but also situations in which the employer denies an employee a material employment benefit or opportunity that was otherwise available to her." *Campbell*, 892 F.3d at 1013. Here, Quintana was no longer able to receive prep buyouts because of her reassignment, resulting in the loss of a material employment benefit that was otherwise available to her. Because this is an adverse employment action, the third *McDonnell Douglas* factor is satisfied. *See id.; see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) ("Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case").

And Quintana established the last *McDonnell Douglas* factor, because Weiler was treated more favorably (i.e., received the prep buyout) because he was hired to replace Quintana, even though he was less experienced and qualified. ECF No. 57 at 28.

Thus, Quintana established a prima facie case of discrimination and the burden shifts to defendants to articulate a legitimate, non-retaliatory explanation for the action. *See McConnell Douglas*, 411 U.S. at 802. If defendants accomplish this, Quintana then must show that the proffered nondiscriminatory reason is pretextual. *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015).

        *ii.*    *Defendants proffered an adequate non-pretextual reason for removing Quintana.*

Defendants primarily rely on their understanding of Quintana's desire to work at the College of Southern Nevada and the difficulty of hiring qualified engineering substitute teachers as the nondiscriminatory justification for removing Quintana from teaching engineering to

classes where a substitute teacher could more easily be located. ECF No. 57 at 28. This is a legitimate, non-retaliatory explanation for moving Quintana. The burden shifts back to Quintana to show this reason is pretextual. *See France*, 795 F.3d at 1175.

A plaintiff can establish pretext by either (1) presenting direct evidence showing that unlawful discrimination more likely than not motivated the adverse action or (2) by showing that the proffered explanation is internally inconsistent or otherwise not believable. *Id.* Quintana fails to do so here. Quintana did not provide the court with sufficient evidence showing that the decision to move her from teaching engineering was motivated, in any manner, by unlawful discrimination. Nor did Quintana show that the proffered explanation is internally inconsistent or otherwise not believable. While Quintana argues that Principal Kuzma and Vice Principal Holmen provided conflicting testimony on when each learned "that she was supposedly leaving for fulltime employment" and the job posting for an engineering teacher, she did not show how defendants' reason for moving her—difficulty of hiring qualified engineering substitute teachers—is inaccurate or unbelievable. Moreover, Quintana fails to cite evidence showing she informed defendants of her intent to return at any time in the Spring of 2019, even though she was first sent the notice via email on February 19, 2019. *See* Defs.' Ex. V, ECF No. 57-3 at 26–27; *id.*, Defs'. Ex. W, ECF No. 57-3 at 32.

In sum, Quintana has established a prima facie case under *McDonnell Douglas*, defendants proffered a legitimate, nondiscriminatory reason for the challenged conduct, and Quintana failed to show that the proffered nondiscriminatory reason is pretextual. Accordingly, I grant summary judgment in favor of defendants for Count II.

### 3.   *Count V: Termination*

Quintana also argues that she was terminated in violation of Title VII. SAC, ECF No. 29 at ¶ 304. Defendants argue that summary judgment is appropriate because Quintana's termination was the direct result of her own inaction, and she fails to present evidence of discrimination. ECF No. 57 at 32. I agree. Even assuming Quintana presented a prima facie case

for discrimination, defendants have proffered a legitimate, non-discriminatory reason for her termination that Quintana fails to rebut.

It is undisputed that Quintana applied for and received approval for a medical leave of absence in November 2018. ECF No. 60 at 10. The leave of absence ran through the end of the 2018/2019 school year. ECF No. 57 at 9; ECF No. 60 at 9. As a returning Rancho High School teacher, Quintana knew of the practice of providing a notice of intent to return to work to secure re-employment for the incoming school year, as she did from the 2013/2014 school year through the 2018/2019 school year. *See* Quintana Notice of Intent to Accept Re-Employment, Defs.' Ex. E, ECF No. 57-1, at 80–86. Quintana specifically stated that she knew that she needed to notify Rancho High School of her intent to return to work before May in order to secure a position for the 2019/2020 school year. Quintana Depo., Defs.' Ex. B, ECF No. 57-1 at 34 (confirming that she knew that she had to return the notice of intent to return form to the school by May). Quintana knew that she had to inform defendants of her intent to return for the 2018/2019 school year to secure employment, and does not dispute that she failed to do so.

Quintana has failed to provide sufficient evidence that her termination was pretext for discrimination. Instead, she argues that she did not receive a notice form.[5] *Id.* at 41; ECF No. 60 at 4. Nonetheless, Quintana was well aware that she had to inform CCSD of her intent to return in order to secure employment for the 2019/2020 school year. *See* Quintana Depo., Defs.' Ex. B, ECF No. 57-1 at 34. There is no evidence to support that Quintana's contract was not renewed for any reason other than her failure to submit her notice of intent. *See* August 22, 2019 CCSD Notification for Leave of Absence Approval, Defs.' Ex. W, ECF No. 57-3 at 32 (explaining that Quintana "failed to notify the District of [her] intent for the 2019-2020 school year by May 10, 2019" resulting in her contract ending at "the conclusion of [her] approved leave of absence.")

---

[5] The record indicates that CCSD Human Resources department alerted Quintana of the need to submit her intent to return for the 2018/2019 school year on multiple occasions. November 13, 2018 CCSD Notification for Leave of Absence Approval, Defs.' Ex. T, ECF No. 57-3 at 21; February 19, 2019 Email CCSD Notification for Leave of Absence Approval Defs.' Ex. V, ECF No. 57-3 at 26–30.

Thus, there is no genuine dispute of material fact that Quintana was terminated for the failure to notify the district of her intent to return for the 2019/2020 school year. Accordingly, the court grants defendant's motion for summary judgment for Count V.

### B. Title VII Hostile Work Environment (Count VI)

Defendants move for summary judgment on Quintana's hostile work environment claim on the basis that the acts are time-barred and that the alleged acts do not constitute a discriminatory hostile work environment. ECF No. at 33–37. I agree.

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21–22). The circumstances that determine whether an environment is abusive "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. In determining whether a work environment is considered objectively "hostile," courts analyze the facts by asking whether a reasonable person under the same or similar circumstances with the same fundamental characteristics as the plaintiff, would find the work environment to be hostile *See Crowe v. Wiltel Commc'ns Sys.*, 103 F.3d 897, 900 (9th Cir. 1996). It is well established that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Quintana alleges that she was subjected to a hostile work environment from mid-2014 to late 2018. SAC, ECF No. 29 at ¶¶ 308–32. In an order dismissing Quintana's initial complaint,

Judge Navarro held that allegations that occurred prior to the statutory cutoff date of December 15, 2017 could not be used to support a hostile work environment claim. ECF No. 28. Accordingly, the only actionable incidents here are those that occurred after December 15, 2017. *See AMRAK v. Morgan*, 536 U.S. 101, 116–17 (2002) ("discriminatory conduct contributing to a hostile work environment claim, but falling outside of the statutory period for filing a claim, may be considered by the Court for purposes of determining liability.").

Quintana argues that she was subject to a hostile work environment because (1) she was not adequately recognized for her ACTE teacher of the year award and (2) a student that she had issues with was "never properly disciplined" for being disrespectful to her, and that she received a "lack of support" from administration regarding this student (though as she states, the student was removed from her class). SAC, ECF No. 29 at ¶¶ 164–66, 322–23; *see* ECF No. 60 at 24 (Quintana states that these two claims fall within the statutory timeframe). Even viewing the evidence in the light most favorable to Quintana, she has provided no evidence that these events were pervasive or that the conduct was motivated by her status in a protected class.

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). There must be a pattern of persistent harassment severe enough to create an abusive working condition and alter the conditions of employment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 (2001). This is a high standard—isolated or sporadic incidents of harassment do not suffice. *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992); *Jordan v. Clark*, 847 F.2d 1368, 1374–75 (9th Cir. 1988). A working environment is abusive if "hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). Quintana's displeasure with not being recognized for an award in the manner she saw fit and her displeasure with the level of discipline the student received/the lack of support with the student

1 are insufficient to give rise to a hostile work environment. Therefore, I grant defendants

2 summary judgment on Quintana's hostile work environment claim.

3     **C. Discrete Act Discrimination Based on Disability in Violation of the Americans**

4         **with Disabilities Act (Counts III, IV)**

5     Quintana complains that her demotion (Count III) and later termination (Count IV)

6 were discrete acts of discrimination based caused by her leave to receive treatment for her

7 disability in violation of the ADA and state law.[6] SAC, ECF No. 29 at ¶¶ 258, 286.

8     In resolving summary judgment motions for ADA claims, courts also apply the *McDonnell*

9 *Douglas* framework. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003) (applying *McDonnell*

10 *Douglas* burden-shifting framework to ADA disability-discrimination claim). To make a prima

11 facie case under the ADA, a plaintiff must establish (1) they are a disabled person within the

12 meaning of the statute; (2) they are a qualified individual with a disability; and (3) they suffered

13 an adverse employment action because of their disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477,

14 1481 (9th Cir. 1996). Under the ADA, "[t]he term 'disability' means, with respect to an individual

15 (A) a physical or mental impairment that substantially limits one or more of the major life

16 activities of such individual; (B) a record of such an impairment; or (C) being regarded as having

17 such an impairment." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. §

18 12102(1)). Failing to establish any of these elements is fatal to an ADA claim. *See e.g.*, *Bradley v.*

19 *Harcourt, Brace & Co.*, 104 F.3d 267, 272 (9th Cir. 1996).

20     Quintana's ADA claims fail. First, Quintana fails to establish she has a disability. In her

21 opposition, Quintana states that she had a disability because of her difficulty sleeping,

22 depressive thoughts, and vomiting. ECF No. 60 at 21–22. Whether she qualifies based on her

23 symptoms is fact dependent, and in the Ninth Circuit, more likely qualifies than not. *Compare*

24

25 [6] "A claim for disability discrimination under the Nevada [anti-discrimination] statute is evaluated under the same standard as a federal ADA claim." *Ramirez v. Wynn Las Vegas*, 2022 WL 3715751, at *7 (D. Nev. Aug.

26 29, 2022); *see also Littlefield v. Nevada, ex. rel. Dep't of Pub. Safety*, 195 F. Supp. 3d 1147, 1152
(D. Nev. 2016) ("Nevada courts apply the ADA approach to plaintiff's state law claims."). I thus analyze
Quintana's state-law and ADA claims together.

*Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999) (plaintiff not substantially limited in sleeping when during a 13–month period she slept two or three hours some nights, awoke without feeling rested, was extremely drowsy and sleepy all the time, and took prescription sleep medication), *and Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) (plaintiff not substantially limited when he slept four to five hours a night), *with Parayno v. Potter*, 2010 WL 4923100 (W.D. Wash. Nov. 29, 2010) *aff'd sub nom. Parayno v. Donahoe*, 479 F. App'x 764 (9th Cir. 2012) (where plaintiff testified that with a work start time of 7:00 a.m., she could obtain five to six hours of sleep, the court found that plaintiff was not substantially limited in the major activity of sleep by virtue of her insomnia and fibromyalgia), *and Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005) (sleeping impairment may constitute a substantial limitation in a major life activity).

The aforementioned Ninth Circuit cases suggest that Quintana could have a disability, but she fails to cite to evidence in support of that finding, nor has provided enough evidence to raise a genuine issue of material fact regarding this prong of the ADA analysis. Instead, she only cites to her own statement of grievances that she made in support of her NERC complaint[7] to argue that her conditions would constitute a disability. Rather, in her deposition she stated that she "couldn't come off FMLA while working at Rancho" but fails to explain or support why should "could not" do so. Quintana Depo., Pl.'s Ex. H, ECF No. 60-1 at 28 ("When it boiled down to I can't come off FMLA unless I'm at a different location, and then the district says we're not

---

[7] Quintana states that she was seen by her primary care physician and a gastroenterologist regarding her alleged vomiting issues. Quintana's Statement of Grievances in support of Affirmative Action and NERC/EEOC Complaints, Defs.' Ex. LL, ECF No. 57-5 at 28. There is no mention of seeing a doctor for sleep issues. She indicates that her poor health was related to working at Rancho High School and states that her health deteriorated as the school year progressed, causing her to miss more work. *Id.* Quintana does not point the court to medical records, and only cites her own statement as evidence in support of her disability. *See* ECF No. 60 at 20. At this stage, Quintana must present significant and probative evidence to support her claim or defense. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Self-serving testimony and uncorroborated allegations will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). And the court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

going to move you anywhere while you're on FMLA, it really -- to me, it signaled that we have no interest in employing you whatsoever."). She also indicates that her gastrointestinal issues were psychosomatic due to the stress caused by working at Rancho, but fails to provide any evidence to support to this contention. *See* NERC/EEOC Compl., Defs.' Ex. LL, ECF No. 57-5 at 45.

Even assuming Quintana is a qualified individual, I must then determine if she, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8); *Nunes v. Wal-Mart, Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). There does not seem to be any dispute Quintana was qualified for her teaching job, but neither party provided in-depth analysis on her ability to perform the essential functions of her job. The evidence reveals that this is where Quintana's claim falls apart. I don't disagree with Quintana that a leave of absence may be a reasonable accommodation in some instances. ECF No. 60 at 23 (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001). But "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, *an employee who does not come to work cannot perform any of his job functions,* essential or otherwise." *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1239 (9th Cir. 2012); *see also*, *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) (holding that "coming to work regularly" is an "essential function"); *Santiago v. Temple Univ.*, 739 F. Supp. 974, 979 (E.D. Pa. 1990) ("attendance is necessarily the fundamental prerequisite to job qualification"), *aff'd*, 928 F.2d 396 (3d Cir. 1991). Quintana missed the *entire* 2018/2019 school year (from August 2018 through May 2019) under medical leave. *See* CCSD Human Resources Correspondence-First FMLA approval, Defs.' Ex. S, ECF No. 57-3 at 16 (stating Quintana's FMLA leave is approved from August 13, 2018 through November 6, 2018); CCSD Human Resources Correspondence-Second FMLA approval, Defs.' Ex. T, ECF No. 57-3 at 21 (stating Quintana's FMLA leave is approved from November 9, 2018 through May 24, 2019). It is axiomatic that attendance, or at a minimum, some sort of ability to actually teach students, is an essential function of being a teacher. *See Sarkisian v. Austin Preparatory Sch.*, 646 F. Supp. 3d 174, 186

(D. Mass. 2022), *aff'd*, 85 F.4th 670 (1st Cir. 2023) (granting plaintiff additional leave would not allow her to perform an essential function of her job, namely attending to her school duties); *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 484–85 (7th Cir. 1999) (unlimited sick time for a teacher, without penalty, is not a reasonable accommodation as a matter of law when in-person attendance is essential to the job.). Without attending work, she could not perform *any* job functions during the time of the alleged adverse employment action, therefore she cannot be a qualified individual under the ADA. Quintana's claims therefore fail so I grant summary judgment in defendants' favor on Count III and IV.

### D. FMLA (Count VII)

In claim VII, Quintana brings an interference and retaliation claims, in violation of 29 U.S.C. § 265. She argues that she was demoted to a position with lower pay and ultimately terminated because she took leave in accordance with the Family Medical Leave Act. SAC, ECF 29 at ¶¶ 348–51. Defendants argue that she was not demoted to a position of lower pay, and that her termination was solely the result of her failure to notify defendants of an intent to return to work when her leave of absence ended. ECF No. 60 at 17.

29 U.S.C. § 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. To establish an interference claim, Quintana must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). Defendants argue that Quintana satisfies all but the fifth factor because they did not deny Quintana the benefits to which she was entitled because it is undisputed that she was approved for the maximum leave benefit allowed by FMLA. ECF No. 57 at 39. While Quintana does not dispute defendants' analysis, she argues that they still used her taking FMLA leave as a negative factor. ECF No. 60 at 26.

In the Ninth Circuit, employers cannot use an employee's FMLA leave as a "negative factor in employment actions, such as hiring, promotions or disciplinary actions." *See Douglas v. Dreamdealers USA, LLC*, 416 F. Supp. 3d 1063, 1071 (D. Nev. 2019) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). Both terminations and demotions may constitute negative employment actions. *See Schultz v. Wells Fargo Bank, NA*, 970 F. Supp. 2d 1039, 1055 (D. Or. 2013) (noting that plaintiff "raised a genuine dispute of material fact as to whether her protected [FMLA] leave was a negative factor in her transfer and demotion."). Case law developed within FMLA framework provides that "terminating or subjecting an employee to negative consequences for the use of FMLA leave constitutes interference, not retaliation." *Escalante v. San Francisco Cmty. Coll. Dist.*, 2020 U.S. Dist. LEXIS 176950, *9 (N.D. Cal. Sept. 25, 2020) (citing *Bachelder*, 259 F.3d at 1124). So I evaluate Quintana's claim within this framework.

### 1. *Quintana's demotion*

Quintana alleges that she was twice reassigned because of FMLA leave. She was first reassigned in the 2018/2019 school year from teaching engineering and robotics to only robotics. SAC, ECF No. 29 at ¶ 202. She contends this constitutes a demotion because this reassignment resulted in her inability to receive a prep buyout. *Id*. Then, she was moved from teaching robotics to teaching freshman studies. SAC, ECF No. 29 at ¶ 209. Quintana argues this decision was made based on her FMLA leave. ECF 60 at 27.

Quintana must show, through direct or circumstantial evidence, that her "taking of FMLA-protected leave constituted a negative factor in the decision" to demote her. *Bachelder*, 259 F.3d at 1125. The proximity of the determination to demote an employee and the leave request may be circumstantial evidence that the leave request was a negative factor in the decision to demote. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). But proximity must be considered in a factual context. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

I struggle to see what else Rancho High School administration could do but reassign Quintana to other classes where her absence would have a less of an impact given the struggles

to find substitute teachers qualified to teach engineering and robotics. But, as Quintana points out, there was only one month's time separating Principal Kuzma and Vice Principal Holmen's learning of her FLMA leave and her reassignment to a full course load of teaching freshman studies. Thus, she argues there is a genuine issue of material fact as to whether her FMLA leave served as a negative factor in the determination. ECF No. 60 at 27. As discussed above, defendants argue that they had reasons unrelated to Quintana's leave to remove her from teaching engineering and later robotics, and further argue there is no evidence indicating that her FMLA leave played a role in the determination. ECF No. 57 at 39–40. While it is not unreasonable that defendants sought an engineering teacher replacement in Quintana's absence, they concede that the decision to reassign Quintana upon her return was **a product of her FMLA leave**: "the teaching assignment necessary to meet the educational needs of Rancho's students while [Quintana] was on FMLA…" *Id.* at 29; *see also* ECF No. at 18–19 ("the reassignment of [Quintana's] position was a legitimate educational response to meeting student needs in light of [her] approved long-term absence from the campus, preventing her presence to teach the more technical courses previously taught be her, and requiring Rancho to locate a long-term substitute teacher."); *see Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) ("[E]vidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights."). This is sufficient to survive summary judgment as it presents a genuine issue of material fact as to whether defendants decision making was intended "to chill [Quintana's] freedom to exercise" FMLA rights. *See Bachelder*, 259 F.3d at 1123 (internal quotation marks omitted). I therefore deny defendants' motion for summary judgment on Quintana's FMLA claim for wrongful demotion.

### 2.  *Quintana's Termination*

To prevail on a claim that an employer interfered with their rights by terminating her in violation of FMLA, a plaintiff must show "by a preponderance of the evidence that

her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1125. This can be proved by either direct or circumstantial evidence, or both. *Id.*

Here, Quintana argues that Principal Kuzma expressed that she "dragging" out her employment, and that "no one would hire [her] if [she was] on FMLA. ECF No. 60 at 28. However, as discussed above, neither Principal Kuzma nor Vice Principal Holmen decided to fire her. Quintana's contract was not renewed because she failed to submit her notice of intent. *See* August 22, 2019 CCSD Notification for Leave of Absence Approval, Defs.' Ex. W, ECF No. 57-3 at 32 (explaining that Quintana "failed to notify the District of [her] intent for the 2019-2020 school year by May 10, 2019" resulting in her contract ending at "the conclusion of [her] approved leave of absence."). Quintana argues that there is a genuine issue of material fact as to whether she received the notice of intent form. ECF No. 60 at 28. But this "issue" is based solely on Quintana's self-serving affidavit. *See id.* at 4 (stating that Quintana did not recall receiving the intent form for the 2018/2019 school year (citing Quintana's deposition)). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *SIC Metals, Inc. v. Hyundai Steel Co.*, 838 F. App'x 315, 316 (9th Cir. 2021) citing *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see also Nev. Power Co. v. Monsanto Co.*, 1994 U.S. Dist. LEXIS 20506, at *17 (D. Nev. Nov. 9, 1994). The evidence shows that Quintana was sent the intent form, and that she was aware that she had to inform CCSD of her intent to return to secure employment for the 2019/2020 school year. *See* Quintana Depo., Defs.' Ex. B, ECF No. 57-1 at 34. And fatal to this claim, there is no evidence indicating that Quintana's FMLA status was a factor considered in her termination—she was terminated because she did not submit the requisite notice, as she had in every school year prior. Accordingly, I therefore grant summary judgment in favor of defendants for Count VII regarding termination but deny summary judgment regarding demotion.

**V.      Conclusion**

IT IS THEREFORE ORDERED that:

1.  defendants' motion for summary judgment **[ECF No. 57] is GRANTED in part and DENIED in part**. The only claim that survives is Quintana's FMLA claim for demotion;

2.  pursuant to Local Rule 16-5, this matter is referred to the magistrate judge for a settlement conference; and

3.  if the case does not settle, the parties **must** file their joint pre-trial order 30 days after the conclusion of the settlement conference.

Dated: February 21, 2024

_____
Cristina D. Silva
United States District Judge